## IN THE

# SUPREME JUDICIAL COURT,

## IN THE

# COUNTY OF KENNEBEC.

### ARGUED AT JUNE TERM, 1844.

### Franklin Bank *versus* Otis Small.

The general rule is, that where personal property attached upon the writ, has been lost through the negligence of the attaching officer, or has been misappropriated by him, he is liable to the attaching creditor for the fair value of the property at the time it would have been taken on the execution, had it remained to be taken thereon.

There are exceptions, however, to this general rule; such as where the officer, immediately upon having attached the property, converts it to his own use; or where he should realize a greater value by a sale thereof; or should obtain it of a receiptor, or of some one who had tortiously taken it from him.

This was an action on the case against the late sheriff of the County of Penobscot, for the neglect of Aaron Haynes, one of his deputies, in not keeping safely property attached on a writ in favor of the plaintiffs against Luther Dwinal and others. The plaintiffs introduced a copy of the original writ upon which the attachment was made, by which it appeared that Haynes had attached " pine mill logs sufficient to make four hundred thousand of boards, being the same that are in" certain booms named. Judgment was obtained and execution duly issued thereon, and delivered to the then sheriff of the county, not the defendant, but his successor in office. There was no proof of any demand of the defendant or his deputy, who made the attachment, for the property attached; except the return of the sheriff to whom the execution was delivered, to which, as evidence of demand, the defendant objected.

SHEPLEY J. presiding at the trial, admitted it as *prima facie* evidence of demand. The defendant then offered evidence to prove that the logs, which were attached upon the writ, were not the property of the original debtor, as whose they were attached, but that at the time of the attachment, the owner of the land, where they had been cut, had a lien upon them for over $2000, and that there was also a lien for boomage; and introduced testimony to prove that one Rufus Dwinal, to whom the defendant committed the custody of the logs after attachment, caused them to be sawed at his expense. There was evidence tending to show, that the boards delivered to the proprietor of the land, where the logs were cut, were made out of the logs attached, and that the sawing, running and boomage, with the lien claims were equal to the value of all the logs, and also that the expenses of sawing, running and booming were incurred by the debtors; and there was evidence to show the contrary, and that about one half the boards made from them were delivered to the owner of the land in extinguishment of his lien, and that the expense of sawing, running to market, boomage, &c. amounted to the full value of the other half of said boards.

It was agreed, that the value of boards of all descriptions, made from said logs, was ten dollars per M. and that no farther evidence of the value of the logs should be produced on either side, and none was produced. The defendant contended, that in addition to the lien of the owner of the land, all the expenses of sawing, &c. actually incurred and paid by Dwinal should be deducted from the value of the boards, and that the defendant would be liable for no more than any balance which should then exist. The Judge instructed the jury, that the defendant was responsible for the full value of the logs, at the time of attachment; that if any lien existed in favor of the proprietors of the land, the amount of it should be deducted from that value; that if one half of said logs, when sawed into boards, extinguished said lien, the defendant would be responsible for the other half; that they were to look to the logs at the time of the attachment, ascertain their value

then, and from that value deduct the lien, if any existed, unless it was otherwise paid; and that to ascertain the value of the logs, they would take the agreement of the parties, that the boards cut from them, were worth ten dollars per M. and by allowing a reasonable price for manufacturing them, instead of the amount actually paid, the value of the logs might be ascertained. The jury returned a verdict for the plaintiffs for $1740,61.

If the instructions of the Judge were erroneous, the verdict was to be set aside, and a new trial granted; otherwise judgment was to be rendered thereon.

There was a motion for a new trial, on the part of the defendant, because the verdict was against the evidence; and a motion by the plaintiffs, that the verdict should be amended.

The case was argued at June Term, 1843, by

*Evans,* for the defendant; and by

*Wells,* for the plaintiffs.

The opinion of the Court was delivered at June Term, 1845, by

WHITMAN C. J. — Various exceptions have been taken to the rulings and instructions of the Judge, who presided at the trial; and upon one of the grounds relied upon, we think a new trial must be granted.

The Judge instructed the jury, that damages were to be assessed according to the value of the logs attached at the time of the attachment. The general rule in such cases is, as emphatically laid down in *Weld* v. *Green,* 1 Fairf. 20. Mr. C. J. Mellen, in that case, says, in reference to property attached on mesne process, and not seized by the attaching officer, Lambert, on execution, "Had it remained in Lambert's possession until execution, and been seized and sold thereon, the defendant would have been accountable only for the amount produced by the sale; and with this Weld (the creditor) must have been content; and why should the defendant be answerable in damages for a greater sum than the fair value of it, when not seized and sold on execution, but lost or misappro-

priated? See *Tyler* v. *Ulmer*, 12 Mass. R. 163. Such a sum would be the amount of injury sustained by the plaintiff; and that is the correct rule in the assessment of damages in such cases." The learned Chief Justice would not seem to have recognized any exception to this general rule. Cases, however, may be supposed, in which it would become reasonable to depart from it. If the officer, immediately upon having attached property, converts it to his own use, or if he should then realize the full value of it by a sale, or recover the same of receiptors, or of one who had tortiously taken it from him, a good reason would exist why he should be answerable to the creditor for such value. But the case before us is not within any such exception.

The officer must of necessity intrust some one with the care and custody of articles like those attached in this instance; and usually receipts are taken of such person, containing a stipulation to have the articles forthcoming on the issuing of an execution on the judgment to be recovered. The person receipting is, usually, some friend of the debtor's, procured by him for the purpose, who, it is understood, will allow the property to go back into the hands of the debtor. And this practice is sanctioned, to some extent at least, by usage, as tending at the same time, to the security of the creditor, and producing as little injury to the debtor as may be practicable. In this case it does not appear that a receipt was taken of the person intrusted by the officer with the custody of the property. Nevertheless the person so intrusted, may be believed to have been a friend of the debtor; for nothing is heard of any dissatisfaction from that quarter.

The case finds that the person so intrusted converted the lumber into boards; and disposed of them, partly to pay the amount due to the original owner of the lumber, who had agreed to part with it only upon the condition, that he should continue to be the owner of it until the agreed value of it, when standing, should have been paid for; and partly to pay the expense of manufacturing it into boards. The officer himself was guilty of no conversion of it; and it does not appear

that he has ever received any of the avails of it; and so would seem to be precisely within the principle, as to the damages to be assessed against him, laid down in the case cited. In that case the officer had delivered the property attached into the custody of a person deemed by him trustworthy and responsible; and in the case at bar, we have no reason to doubt, that the officer did the same; and in both cases the persons intrusted had so far converted the property to their own use, that they were unable to restore it to be taken on execution.

*New trial granted.*